J-A16011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 360 EDA 2022 |

Appeal from the Order Entered January 3, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-DP-0000038-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 361 EDA 2022 |

Appeal from the Decree Entered December 22, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-AP-0000022-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 364 EDA 2022 |

Appeal from the Order Entered January 3, 2022
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-DP-0000039-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A16011-22

:
:
:
APPEAL OF: K.E., MOTHER         :
:
:
:
:
:   No. 365 EDA 2022

Appeal from the Decree Entered December 23, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-AP-0000021-2021

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 01, 2022**

In these consolidated cases, K.E. ("Mother"), appeals from the decree and order terminating her parental rights to M.W. and A.W. ("Children") and changing the Children's goal to adoption. She claims that the evidence was insufficient to support the termination of her parental rights and challenges the altering of the Children's permanency goal from reunification to adoption. We affirm.

Children were born to Mother and C.M.W. ("Father") in February 2019. After Mother tested positive for various drugs in August 2020, Wayne County Children and Youth Services ("CYS") implemented an in-home safety plan involving maternal grandmother. However, that plan was soon discontinued when maternal grandmother tested positive for drugs as well. Mother and Father voluntarily placed Children in foster care and the following month, on September 11, 2020, the trial court adjudicated the Children dependent. CYS

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

initiated the Children's permanency plan ("the Plan") three days later. In April 2021, the Children were placed with paternal aunt and uncle, who have been identified as potential adoptive parents ("Adoptive Parents").[1] CYS reports that the Children currently have a positive bond with Adoptive Parents and refer to them as Mom and Dad. According to CYS, the Children are progressing well and are happy with Adoptive Parents.

Mother and Father have had difficulty finding appropriate housing as evidenced by five separate moves over the course of these proceedings. On November 15, 2021, Mother and Father moved into a one-bedroom apartment. On that same date, CYS filed petitions to terminate Mother's and Father's parental rights and a petition to change the goal from reunification to adoption. At a hearing on December 7, 2021, Mother, Father, the Children's CYS caseworker, and the Children's guardian *ad litem* testified. Ultimately, the trial court issued a decree on December 23, 2021, and a subsequent order on January 3, 2022, terminating Mother's and Father's parental rights and granting CYS's goal change petitions.

In its opinion supporting its decree, the trial court made the following findings of fact specifically concerning Mother:

> 1. Since the inception of this case, Mother was offered eighty[-]eight (88) visits. Out of the eighty-eight (88) offered visits, Mother attended forty[-]nine (49) visits, fourteen (14) of which were in- person visits, and thirty[-]five (35) were virtual visits.

---

[1] Mother and Father have an additional younger child, who has been placed in a different foster home and is not at issue in this case.

2. Out of the thirty[-]nine (39) missed visits, Mother did not provide a reason for missing twenty[-]three (23) visits. However, for twelve (12) of the missed visits, Mother cited that she was not feeling well and had possible COVID[-]19 exposure as her reasoning for missing those visitations. For three (3) visits, Mother had a work conflict. For one (1) visit, Mother had a death in the family.

3. The current visitation schedule requires that visitation occur no less than twice per month specifically supervised at [CYS] one day every other week for one hour. If the parents cooperate with [CYS] then visitation will increase as deemed appropriate by [CYS]. Throughout the course of the proceedings, the visitation schedule remained unchanged.

4. The last time Mother saw the minor [C]hildren in person was in October of 2021.

5. Mother's most recent virtual visit occurred on November 29, 2021.

6. [CYS] is proposing one good-bye visit supervised at [CYS].

7. [CYS] believes that there is a minimal bond between the minor [C]hildren and Mother due to the fact that in the last fifteen (15) months, the minor [C]hildren have seen Mother approximately fourteen (14) times.

8. At the time that [CYS] was involved in the case, there were concerns that Mother had substance abuse issues. On August 7, 2020, Mother tested positive for amphetamines, methamphetamines, buprenorphine, and marijuana. Mother admitted to using suboxone and Adderall without a prescription, however, Mother denied the methamphetamine use.

9. On September 14, 2020, April 6, 2021, and July 6, 2021, Mother's compliance with the Plan was minimal, and as of the date of the hearing on December 7, 2021, Mother's compliance with the Plan was none.

10. On December 14, 2020, and April 6, 2021, Mother's progress was minimal, and on July 6, 2021, and as of the date of the hearing on December 7, 2021, Mother made no progress.

11. Mother failed to comply with the Plan because she did not initially provide [CYS] with her change of address in order to arrange visitation with the minor [C]hildren.

12. [CYS] attempted to arrange at-home visitations with Mother, however, Mother failed to comply with the Plan because she did not communicate with [CYS] to arrange the visitations. Therefore, no home visitations transpired since October of 2021.

13. Mother has attended some of her "clean slate" drug addiction appointments, and it was reported that Mother was drug free, however, the results of those drug screenings were not sent to [CYS], and Mother refused to drug screen at [CYS]. Mother was last drug screened in her home by [CYS] on October 16, 2020, and Mother was last screened at [CYS] on July 19, 2021 which were negative.

14. Mother has failed to attend medical appointments for the minor [C]hildren. Mother has failed to provide safe and stable housing for the minor [C]hildren. Mother has not participated in a parenting program ("Clean Slate" does not provide a parenting program), and Mother has refused "Justice Works." However, when visitations were arranged, Mother has exhibited proper parenting skills.

Tr. Ct. Op., 12/22/21, 4-6.

Following the hearing, the trial court found that CYS had established by clear and convincing evidence that grounds for termination existed pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), and that termination was in the best interest of the Children under 23 Pa.C.S.A. § 2511(b). This timely appeal followed. Both the court and Mother complied with Pa.R.A.P. 1925.

Mother raises the following issues on appeal:

1. Whether the Trial Court erred as a matter of law in determining that that termination of parental rights of [Mother] was warranted[;]

2. Whether the Trial Court erred as a matter of law in determining that that termination of parental rights of [Mother], was in the best interests of [Children][;]

3. Whether the Trial Court erred as a matter of law in determining that [CYS] had met its burden of proof in this involuntary termination of parental rights in this matter[;]

4. Whether the Trial Court erred as a matter of law in determining the new permanent goal was adoption in this matter[.]

Mother's Br. at 4 (suggested answers omitted).

In her first three interrelated issues, Mother claims that the trial court erred in determining that sufficient evidence supported the termination of her parental rights under 23 Pa.C.S.A. §§ 2511(a)(2) and (b). She argues that she attended a significant percentage of visits with the Children and that her failure to attend other visits could often be excused by her own sickness or exposure to COVID-19. Further, she asserts that the court did not properly consider her positive efforts in obtaining housing and attending programs, such as "Clean Slate." Lastly, Mother also maintains that the court erroneously failed to consider the bond between herself and the Children before terminating her parental rights.

When we review an order terminating parental rights, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018) (citation omitted). We may reverse a trial court decision for an abuse of discretion "only

upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***See In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id***. (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***See In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Section 2511 requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***Id***. (citations omitted).

To affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we

conclude that the trial court properly terminated Mother's parental rights pursuant to subsection 2511(a)(2). Subsection 2511(a)(2) provides:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Subsection 2511(a)(2) thus requires the moving party to prove three things by clear and convincing evidence: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super. 2008) (citation omitted). "The grounds for termination of parental rights under subsection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." *Id*. (citation omitted).

Moreover, this Court has emphasized:

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* at 759 (citation omitted).

If the trial court has concluded that a parent's parental rights should be terminated under Section 2511(a), then the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interests of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of S.P.*, 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect on the child of permanently severing any such bond.

In this case, the court properly concluded that CYS established, by clear and convincing evidence, that Mother's conduct caused the Children to be without proper parental care and that Mother could not or would not remedy the conduct that led to the Children's placement. *See* Tr. Ct. Op., 12/22/21, at 10-13; Tr. Ct. Pa.R.A.P. 1925(a) Op., 1/21/22, at 10-12. According to the trial court, both Mother and Father were offered numerous opportunities to visit with the Children, many of which they declined. *Id*. Further, both Parents made little or no progress on the Plan by refusing to participate in on-line parenting classes via the Justice Works program, refusing drug testing at CYS offices, and failing to timely update CYS about residential moves. *Id*. Further,

both Mother and Father declined to attend any of the Children's doctor appointments. *Id*.

On this basis, the court concluded that "[t]he Parents' [made] minimal to no progress in the Plan, and their failure to cooperate with [CYS] indicates that they do not possess the skillset to care for and nurture the minor [C]hildren." Tr. Ct. Op., 12/22/21, at 11. We discern no abuse of discretion. *See In re Adoption of K.C.*, 199 A.3d at 473. The record supports the court's determinations. *See In re Adoption of S.P.*, 47 A.3d at 826-827. Although we recognize that both parents have made more recent efforts, such as obtaining housing, parental rights cannot be maintained by waiting for a more suitable time to perform parental duties while others care for and bond with the subject child. *In re K.Z.S.*, 946 A.2d at 759.

Likewise, we conclude that the trial court properly found that the Children's best interests would be served by termination of Mother's parental rights. The Children, who at the time of the hearing were less than three years old, had been out of Mother's care for over 15 months and were thriving with Adoptive Parents. The court noted that while the Children expressed love and affection toward Adoptive Parents, the same could not be said regarding their bond with either Mother or Father. The court stated, "The testimony presented a diminished bond between the Parents and the [Children] and the Parents have not expressed a sense of love or endearment towards the [Children]." Tr. Ct. Op., 12/22/21, at 12. Thus, the trial court properly considered the Children's diminished bond with Mother when terminating her parental rights

as required pursuant to Section 2511(b). Mother's first three issues warrant no relief.

Next, Mother contends that the court erred by altering the Children's permanency goal from reunification to adoption. Given our affirmance of the termination of her parental rights, Mother's appeal from the decree and order changing the Children's goal is moot. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020) (citing *In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force for effect.")). Accordingly, Mother's last issue also must fail. We affirm the trial court's decree and order terminating Mother's parental rights and changing the Children's goal from reunification to adoption.

Decree and Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 9/1/2022*

- 11 -